BILL HOFFMAN v. CLEMENT BROTHERS COMPANY, A CORPORATION

No. 7525SC460

(Filed 19 November 1975)

Contracts § 27— payment of subcontractor — contract provisions followed — directed verdict proper

    In plaintiff subcontractor's action to recover the balance allegedly due him from defendant prime contractor, the trial court erred in denying defendant's motion for directed verdict on plaintiff's cause of action based on specific contract and its motion for judgment n.o.v. where the contract provided that plaintiff was to be paid for his work on the same basis as payment was received by defendant from the owner, and plaintiff stipulated and admitted on cross-examination that defendant had paid him on the same basis as payment had been received by defendant from the project owner.

APPEAL by defendant from *Ferrell, Judge.* Judgment entered 14 March 1975 in Superior Court, CALDWELL County. Heard in the Court of Appeals 22 September 1975.

In this action plaintiff, a subcontractor, seeks to recover the balance allegedly due him from defendant, the prime contractor in construction of the Carter's Dam at Cartersville, Georgia. In his complaint, plaintiff pleads three alternative causes of action. First, he asks for $56,250, plus interest, allegedly due on specific contract. In the alternative, he asks

Hoffman v. Clement Brothers Co.

for recovery of the same amount on *quantum meruit*. As a second alternative, he asks for recovery in the amount of $60,000 based on alleged false representations made by defendant.

In its answer, defendant denied any indebtedness to plaintiff, further alleged that it had overpaid plaintiff in the sum of $6,618.34, and counterclaimed for that amount.

Prior to the trial the parties entered into stipulations which included the following: (numbering ours)

1. On or about November 12, 1968 the parties entered into a subcontract agreement, copy of which is attached to the answer.

2. Plaintiff began hauling dirt under the terms of the subcontract agreement, on or about December 9, 1968 and continued to work on the Carter's Dam Project until about October 31, 1969.

3. Plaintiff has received payment from the defendant for hauling 140,111 cubic yards of compacted dirt fill at 75 cents per cubic yard for a total of $105,083.25 (less payroll and expenses about which there is no dispute).

4. By December 1, 1969, Clement Brothers Company had accumulated retainages under the agreement amounting to $5,254.16.

5. Plaintiff received payment for compacted dirt fill placed in "Impervious Zone 1" on the same basis as payment was received by the defendant from the project owner.

Provisions of the contract between the parties pertinent to this appeal are as follows:

"WHEREAS, Clement Brothers Company is prime contractor on Contract Number DA-01-076-CIVENG-65-283 for construction of Carters Dam, Carters, Georgia. And for the purpose of this agreement the prime contractor agrees to subcontract to Hoffman Contracting Company a certain portion of the work as follows: Loading and hauling to the embankment approximately 150,000 cubic yards of compacted fill. Which is impervious zone one (1) and being a part of contract item number 7. Such material will be loaded and hauled from designated borrow sources within the government property and not to exceed a total length of 8,000 feet one way.

Hoffman v. Clement Brothers Co.

"The SUBCONTRACTOR agrees to load and haul to the embankment at a rate of approximately 2,000 cubic yards per 10 hour day.

"Payment is to be made on the above work on the same basis as payment is received by the prime contractor from the owner which is outlined in Section 4-12(6)(b)(1) which reads in part:

> Compacted impervious fill placed in embankment will be paid for at the contract price per cubic yard for Item number 7 which will be measured as the volume in place. Measurement to be made between the lines determined on the basis of a survey made prior to beginning work under this subcontract, and to survey lines determined at the completion of this subcontract. Payment for the above work will be at the rate of $0.75 per cubic yard determined on a monthly basis and payable within fifteen days after the prime contractor receives their estimate from the owner, less 5 percent retainage until satisfactory completion of the above work."

Admissions in the pleadings, stipulations, plaintiff's evidence and defendant's evidence which clarified or explained plaintiff's evidence, tended to show in pertinent part: The Carter's Dam project was an earth and rock filled dam owned by, and built under, the supervision of the U. S. Army Corps of Engineers and, upon its completion, was the highest earth and rock dam east of the Mississippi River. The structure, approximately 450 feet high and 2,000 feet across the top, was constructed in "zones" extending vertically from the base to the top of the dam. Zone 1, known as the "Impervious Zone," is the center of the dam and is made of clay. Transitional sections called Zone 2, made of decomposed rock, are on each side of the Zone 1 clay core. The dam had been raised to approximately 390 feet when plaintiff began his work which was to "top out" the final 60 feet of Zone 1. Defendant had been hauling Zone 1 clay in large "pans" until they approached the top of the core; it then became impractical to haul in pans because construction room was limited. Plaintiff had a trucking operation and it was determined that his trucks could move the dirt easier than the big pans. Defendant was engaged only to haul clay to Zone 1.

Hoffman v. Clement Brothers Co.

In his testimony, plaintiff described how he carried out his work. The outer lines of Zone 1 were indicated with stakes and while plaintiff's trucks were hauling and dumping clay into Zone 1, other equipment, owned or provided by defendant, was hauling material for adjacent zones. As plaintiff's trucks would dump their loads, the clay would be compacted with heavy equipment. On many occasions, raising the adjoining zone would be slower than the rate plaintiff was raising Zone 1, resulting in some of the clay that he hauled spilling over onto adjoining zones.

Issues were submitted to, and answered by, the jury as follows:

"1. What amount, if any, is plaintiff entitled to recover of the defendant based upon the written contract between the parties?

ANSWER: $5,254.16.

"2. Is the plaintiff entitled to recover of the defendant upon *quantum meruit* for work, labor and services performed by the plaintiff?

ANSWER: No.

"3. What amount, if any, is plaintiff entitled to recover of defendant for work, labor, and services performed?

ANSWER: None.

"4. What amount, if any, is defendant entitled to recover of the plaintiff based upon the written contract between the parties?

ANSWER: None.

From judgment predicated on the verdict ordering that defendant pay plaintiff $5,254.16, with interest from 23 October 1969, together with costs of the action, defendant appealed.

*West & Groome, by Ted G. West, for plaintiff appellee.*

*Kluttz and Hamlin, by Richard R. Reamer, for defendant appellant.*

BRITT, Judge.

Defendant assigns as error the failure of the trial court to grant its motion for directed verdict on plaintiff's cause of

action based on specific contract and its motion for judgment notwithstanding the verdict. We think the assignment has merit.

The contract clearly provides that plaintiff was to be paid for his work "on the same basis" as payment was received by defendant from the owner. In stipulation numbered 5 above, plaintiff admitted that he had received payment for dirt fill placed in Zone 1 on the same basis as payment was received by defendant from the project owner. On cross-examination plaintiff stated: ". . . I have been paid for everything that went into Zone 1 that Clement has been paid for and Clement has lived up to the contract by paying me for what stayed in Zone 1."

The only evidence supportive of a claim by plaintiff related to clay which plaintiff hauled and which spilled over into Zone 2. Plaintiff contends that the spillage was considerable and that defendant's agent agreed that they would "work out something" with respect to it. Defendant, on the other hand, contends that it not only received no benefit from the spillage but that it created a problem due to the different type and purpose of materials that were required for Zone 2.

Any claim which plaintiff might have for hauling clay which did not stay in Zone 1 would have to be based on *quantum meruit*. It is noted that the trial court's instructions with respect to the spillage were given on the second and third issues. A jury question was raised as to *quantum meruit*, the jury answered the issues against plaintiff, and plaintiff did not appeal from that determination. There is no evidence to support a verdict on the first issue relating to express contract.

Defendant was entitled to allowance of its motion for directed verdict with respect to the claim presented in the first issue. Since the court submitted the issue and it was answered in favor of plaintiff, defendant was entitled to an allowance of its motion for judgment notwithstanding the verdict. G.S. 1A-1, Rule 50.

For the reasons stated, the judgment appealed from is vacated and this cause is remanded to the superior court for the entry of judgment setting aside the verdict on the first issue and dismissing the action.

Judgment vacated and cause remanded.

Judges PARKER and CLARK concur.